[No. D056974. Fourth Dist., Div. One. Apr. 7, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
AARON WADE BYRD, Defendant and Appellant.

## COUNSEL

Richard de la Sota for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., Karl T. Terp and Scott Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, Acting P. J.**—Aaron Wade Byrd contends the trial court erred when it sentenced him to prison for forcible sodomy (Pen. Code;[1] § 286, subd. (c)(2); count 3) with a fixed-term enhancement for aggravated kidnapping for purposes of committing the crime (§ 667.61, subd. (d)(2)), but refused to stay his sentence for simple kidnapping (§ 207; count 1) because,

---

[1] All statutory references are to the Penal Code.

Byrd contends, he committed the sodomy during the *same* kidnapping. Byrd also contends his case should be remanded for resentencing because the trial court did not recognize it had discretion to impose concurrent, as opposed to consecutive, sentences on counts 1, 2, 3 and 5 based on the trial court's failure to recognize that all the offenses arose on the same occasion or out of the same operative facts.

As we explain, we agree the record fails to show the trial court recognized it had discretion to sentence Byrd concurrently when it sentenced him consecutively on count 5, possession of a firearm by a convicted felon (§ 12021, subd. (a)(1)) under the "Three Strikes" law. We thus remand for resentencing on count 5 only. In all other respects, we affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

In mid-October 2005 between 8:00 and 9:00 p.m., 17-year-old victim 1 and his friend, 15-year-old victim 2, were together in a pickup truck driven by victim 1. The boys were driving on a dirt road in the Meadowbrook area of Riverside County, headed towards a friend's house. It was dark. Victim 1 and victim 2 saw Byrd step into the middle of the road in the path of the pickup. Standing in the light from the headlights of the pickup, the boys saw Byrd holding what turned out to be a .22-caliber rifle. Victim 1 stopped his pickup to avoid hitting Byrd. Victim 1 froze and Byrd pointed his rifle at the boys as he forced his way into the cab of the pickup. Both boys recognized Byrd as a local transient.

Byrd angrily ordered victim 1 to start driving. Byrd gave victim 1 directions and threatened victim 1 with the rifle. At some point, Byrd said he needed to pick up a friend and wanted to get methamphetamine. As they drove, Byrd and victim 1 argued about an old, beat-up computer belonging to Byrd. Apparently, about a week before this incident, victim 1 drove Byrd and victim 1's friend to a location where they unsuccessfully attempted to trade the computer for some drugs. When the deal fell through, Byrd left his computer in the back of victim 1's pickup and that was the last time Byrd saw it.

Victim 2 repeatedly told Byrd he wanted to get out of the pickup, as victim 2 had no knowledge of Byrd's computer or what had happened to it. Byrd eventually agreed and directed victim 2 to get out in "the middle of nowhere." Byrd threatened victim 2 with the rifle and demanded victim 2 get out to make room for Byrd's friend Byrd wanted to pick up. Victim 2 told victim 1 to "take me home" and victim 1 began driving towards victim 2's home. As they drove, victim 2 implored Byrd to let him go. Byrd finally

agreed to let victim 2 go near victim 2's house. Victim 2 estimated he was inside the pickup with Byrd and victim 1 for at least 15 minutes.

Victim 1 testified he gave victim 2 his cell phone before victim 2 got out of the pickup so that victim 2 could call the police. Victim 2 testified he had his own cell phone and victim 1 did not give him a cell phone. In any event, when victim 2 got home he neither called the police nor told anyone what had just happened.

With victim 2 gone, Byrd directed victim 1 to "drive." Byrd eventually had victim 1 drive to a specific location, stop the pickup and walk with Byrd some distance to a trailer. Byrd kept the rifle "on [victim 1] the whole time." Byrd ordered victim 1 into the trailer and, once inside, into an empty room in the back of the trailer. The area around the trailer was dark and there was no light inside the trailer other than from the moonlight. Victim 1 complied with Byrd's demands because Byrd was armed and victim 1 feared for his life if he tried to escape.

Once in the bedroom, Byrd had victim 1 hold lighted matches under tinfoil so Byrd could smoke methamphetamine. Byrd offered victim 1 methamphetamine but victim 1 refused. Victim 1 estimated it took Byrd about an hour to smoke the drug. While in the bedroom, Byrd again brought up the missing computer and asked victim 1 how he intended to compensate Byrd for it. Victim 1 told Byrd he had nothing to do with the loss of the computer and did not owe Byrd anything. Nonetheless, victim 1 offered Byrd some "speakers" but Byrd declined.

Byrd next ordered victim 1 to take off his clothes. When victim 1 refused, Byrd pointed the rifle at victim 1's head and asked victim 1 if he wanted to die. Victim 1 pushed the barrel of the rifle away from his head, but Byrd became angry and insisted victim 1 remove his clothes. Victim 1 complied. During this time, Byrd suggested victim 1 could repay him with oral sex for the lost computer.

Byrd next ordered victim 1 to lie down on the floor on his stomach. After victim 1 complied, victim 1 looked over his shoulder, saw the gun in Byrd's right hand and Byrd taking off his pants and shirt and heard Byrd opening what sounded like a condom package and spitting on himself for lubrication. Byrd then used his legs to push victim 1's legs apart, got on top of victim 1 and inserted his penis into victim 1's anus. Byrd sodomized victim 1 for about a half-hour, moving back and forth inside him, and removing his penis from victim 1's anus "several times" and reinserting it. Victim 1 did not attempt to escape because Byrd kept the rifle in his right hand the entire time.

After victim 1 felt Byrd ejaculate onto victim 1's back and anus, Byrd sat and dressed. Victim 1 grabbed his clothes and dressed. He testified he told

Byrd, "[Y]ou know, you don't tell anybody—I wouldn't-tell-anybody type thing, you know. Kind of like said, 'Can I go, pretty much, as long as I don't tell anybody, if I don't say anything?' Made it seem like I wouldn't say anything." Byrd shook his head, and victim 1 left, walked to his pickup and drove straight home. Victim 1 took a shower and went to bed.

The next morning, victim 1 told his mother what had happened. Victim 1's mother called the police, who met with victim 1 at his house. The police then drove victim 1 to the location where Byrd had made victim 1 park his pickup near the trailer. The police then took victim 1 to the hospital for a physical examination.

Police showed victim 1 a photographic lineup and he immediately identified Byrd as the perpetrator. Police examined the underwear worn by victim 1 on the night of the incident and found it tested positive for seminal fluid and spermatozoa. A DNA analysis established Byrd was the primary contributor of the sperm and seminal fluid while victim 1 was a "possible" secondary contributor of the sperm. Police arrested Byrd the day after the incident.

The District Attorney of Riverside County filed a five-count second amended information (information) charging Byrd in count 1 with the October 14, 2005 kidnapping of victim 1 (§ 207, subd. (a)), in count 2 with the kidnapping of victim 2 (*ibid.*), in count 3 with the forcible sodomy of victim 1 (§ 286, subd. (c)(2)), in count 4 with the forcible sodomy of a person under the age of 18 (*id.*, subd. (b)(1)) and in count 5 with possession of a firearm by a convicted felon (§ 12021, subd. (a)(1)). In connection with count 3, the information alleged Byrd personally · used a firearm (§§ 667.61, subd. (d)(2), 1192.7, subd. (c)(8)), Byrd kidnapped victim 1 in connection with the commission of the offense (§ 667.61, subd. (d)(2)) and personally used a firearm and a deadly and dangerous weapon, namely a .22-caliber rifle (§§ 12022, 12022.3, 12022.5, 667.61, former subd. (e)(4)). For all counts, the information alleged Byrd had served prison terms (§ 667.5, subds. (a), (b)), had two prior serious felony convictions (§ 667, subd. (a)) and two prior strike convictions (§§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(A)). At trial, Byrd did not present a defense.

A jury convicted Byrd on all counts and made true findings on the enhancements with the exception of section 667.61, former subdivision (e)(4)—use of a dangerous or deadly weapon or a firearm in connection with the offense specified in subdivision (c)—in connection with count 3. The trial court subsequently made true findings on the prior convictions, prison terms and strike enhancements that were specifically alleged in each of the charges.

In early November 2009, the trial court sentenced Byrd to a total prison term of 190 years to life computed as follows: for count 3, forcible sodomy of victim 1, the court imposed a term of 25 years to life pursuant to section 667.61, subdivision (a) and tripled that sentence based on Byrd's two prior robberies alleged as strikes, for an aggregate term of 75 years to life. The court imposed an additional 10 years for the section 12022.53, subdivision (b) enhancement and an additional 10 years for the two prior robberies pursuant to section 667, subdivision (b). The court struck the allegations of prior convictions brought pursuant to section 667.5, subdivisions (a), (b). Thus, the total term imposed by the court on count 3, which the court deemed the principal term, was 95 years to life.

As to count 1, kidnapping (victim 1), the court imposed a consecutive third strike sentence of 25 years to life, plus an additional five years for each of the section 667, subdivision (a) robbery priors for a total term of 35 years to life. As to count 2, kidnapping (victim 2), the court sentenced Byrd to a consecutive third strike term of 25 years to life plus an additional five years for each of Byrd's two section 667, subdivision (a) priors for a total term of 35 years to life.

As to count 4, forcible sodomy with a person under the age of 18, the court sentenced Byrd to a third strike term of 25 years to life, but stayed the imposition of that sentence and the enhancements pursuant to section 654. As to count 5, felon in possession of a firearm, the court imposed a consecutive third strike sentence of 25 years to life.

## DISCUSSION

### A. *Stay of Punishment on Count 1*

Byrd first contends the trial court erred when it refused to stay the execution of his sentence for kidnapping victim 1 in violation of section 207, subdivision (a) (count 1) because kidnapping was the only qualifying circumstance used to sentence Byrd under subdivision (a) of section 667.61 (the one strike law) (*People v. Mancebo* (2002) 27 Cal.4th 735, 741 [117 Cal.Rptr.2d 550, 41 P.3d 556]), for forcible sodomy of victim 1 (count 3).[2]

### 1. *Additional Background*

At the sentencing hearing, defense counsel argued Byrd's sentence on counts 1 and 4 should be stayed pursuant to section 654:

---

[2] Byrd does *not* contest the validity of the one strike sentence imposed in this case.

"[Defense counsel]: It would be the defense's position that Count 4 would be 654 with Count 3, if I have that right. Yes. And then it would also be our position that Count 1 would be 654 to the special allegation under Count 3, the 667.61(d)(2), and that's the aggravated sexual assault.

"The allegation is that there was a kidnapping of [victim 1] during the commission of that offense; and Count 1 charges Mr. Byrd with kidnapping [victim 1]. So because it involves the same conduct and the same intent and purpose, I don't believe the court would be authorized in imposing a sentencing under both Count 1 and a sentence under that allegation.

"THE COURT: All right. Do the People wish to respond?

"[Prosecutor]: Yes, your Honor. I'm going to go ahead and disagree with [defense counsel] on that. I think that had Count 1 been a 209, had it been kidnapping for the purposes of a sexual assault, then I would absolutely agree with [defense counsel]. But what we have is we have a situation in which the defendant kidnapped two young men with a weapon and directed them to go different places; whether it was a hunt for drugs or a hunt for stolen items, I don't know. But what began as a kidnapping developed into moving the victim into an isolated and separate location in order to carry out these crimes against him.

"And I think what the [Legislature] contemplated in having this 667.61 enhancement was to further punish the defendant who chooses to commit these crimes during the commission of or taking someone to a less safe, less discoverable place to carry out these acts. So I think for that reason it is separate and distinct from Count 1.

"THE COURT: And as to Count 4?

"[Prosecutor]: I submit on that.

"THE COURT: All right. As to Count 4, I concur with defense that this count would be 654 to Count 3. And as I prepared for the sentencing today I certainly intended to stay the punishment on Count 4 towards—because of the crime in Count 3. However, as to Count 1, I believe there were different objectives at the time Count 1 was committed.

"Count 2 was also committed, which was a kidnapping of another individual [(victim 2)], and at that time there were two individuals being kidnapped at the same time in the same vehicle at gunpoint. Later on, during the evening or other hours of the crime when one of the victims had been released from the car, either voluntarily or involuntarily but had left the

vehicle, I believe different objectives took place, and then Count 3 occurred at a later time. So I do not view Count 1 as being 654."

### 2. *Section 667.61 Governs Whether to Stay Punishment on Count 1*

Byrd argues on appeal this issue is governed exclusively by section 667.61, subdivision (f) and not by section 654, subdivision (a).[3] Here, the trial court relied on section 654[4] when it refused to stay Byrd's sentence for "simple kidnapping" of victim 1. (See § 207, subd. (a); count 1.)

As we explain, we conclude that subdivision (f) of section 667.61—a provision in the one strike law—is the operative statute in resolving this issue and that the trial court did not err when it sentenced Byrd for violation of section 667.61, subdivisions (c), (d)(2) (count 3) and refused to stay his sentence for violation of section 207, subdivision (a) (count 1).

Byrd mainly relies on the Supreme Court's decision in *People v. Mancebo, supra*, 27 Cal.4th 735, to show the trial court erred in refusing to stay his sentence for the kidnapping of victim 1 in count 1. There, the information charged the defendant with numerous sex offenses against two victims and charged personal use of a firearm (§ 12022.5, subd. (a)). Under the one strike law, the information also alleged that the crimes against one victim were committed under circumstances of kidnapping and firearm use (§ 667.61, subd. (e)(1), former subd. (e)(4)) and the crimes against the other victim were committed under circumstances of firearm use and that the defendant engaged in the tying or binding of the victim (§ 667.61, former subd. (e)(4), (6)). (*People v. Mancebo, supra*, 27 Cal.4th at pp. 740, 742–743.) Significantly however, the information did *not* allege a multiple-victim circumstance pursuant to section 667.61, former subdivision (e)(5). (27 Cal.4th at p. 740.) "[N]or was its numerical subdivision (subd. (e)(5)) ever referenced in the pleadings." (*Ibid.*)

The jury convicted the defendant and found true the allegations under section 12022.5, subdivision (a) and section 667.61, subdivision (e)(1), former subdivision (e)(4), (6). (*Mancebo, supra*, 27 Cal.4th at pp. 738–740.) At sentencing, however, the trial court substituted the *uncharged* multiple-victim circumstance (§ 667.61, former subd. (e)(5)) for the gun use circumstance (§ 667.61, former subd. (e)(4)) and imposed the one strike term

---

[3] The record shows Byrd's trial counsel viewed the issue as governed solely by section 654, as trial counsel did not rely on section 667.61 when objecting to Byrd's kidnapping sentence on count 1.

[4] Section 654 provides in relevant part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

without utilizing the gun use circumstance. The trial court then used the gun use enhancement to impose an additional 10-year term pursuant to section 12022.5, subdivision (a). (*Mancebo, supra*, at pp. 740, 743.)

In light of the wording of the one strike law, specifically the language that requires the circumstances be "pled and proved" (§ 667.61, subd. (f)) and be included in the "accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact" (*id.*, former subd. (i)), our Supreme Court held the trial court erred when it relied on the uncharged, multiple-victim circumstance in sentencing the defendant because that circumstance was neither included in the accusatory pleading nor "proved" for purposes of the one strike law. (*Mancebo, supra*, 27 Cal.4th at p. 743.) Because the gun use allegation was one of the qualifying circumstances to impose punishment under the one strike law (§ 667.61, former subd. (e)(4)) and because gun use was one of the "minimum number of circumstances" (*id.*, subd. (f)) that were necessary to punish defendant to 25 years to life under that law (*id.*, subd. (a)), the court held the additional imposition of a 10-year term for personal use of a firearm "*violated the plain language and express provisions of section 667.61, subdivision (f).*" (*Mancebo, supra*, 27 Cal.4th at p. 744, italics added.)

Factually, *People v. Mancebo* is distinguishable from the instant case, inasmuch as here the information expressly accused Byrd in count 3 of aggravated kidnapping in connection with the offense of forcible sodomy and specifically referenced subdivision (d)(2) of section 667.61. Thus, unlike the situation in *People v. Mancebo*, the People here formally "pled" and ultimately "proved," based on the jury's finding (§ 667.61, subd. (f)), the minimum qualifying circumstance required for one strike sentencing.

We agree with Byrd, however, that the reasoning of *People v. Mancebo* is instructive here.[5] We note that in reaching its decision, our Supreme Court relied entirely on the "plain wording" of subdivision (f) and various other

---

[5] The People rely on *People v. Palmore* (2000) 79 Cal.App.4th 1290 [94 Cal.Rptr.2d 784] and, to a lesser extent, on *People v. Alvarado* (2001) 87 Cal.App.4th 178 [104 Cal.Rptr.2d 624] to support the argument the trial court was not required under *section 654* to stay punishment for Byrd's conviction on count 1. We conclude both cases are factually distinguishable and neither addresses our issue. In *People v. Palmore, supra*, 79 Cal.App.4th 1290 the defendant was *not* convicted of burglary—the qualifying circumstance used to punish him under the one strike law for forcible rape and forcible sodomy (§ 667.61, subd. (e)(2)). Similarly, in *People v. Alvarado, supra*, 87 Cal.App.4th 178 the defendant was sentenced for robbery and forcible rape, with the sentence for rape enhanced under section 667.61, subdivision (e)(2) because it was committed during the commission of a burglary. Significantly, the defendant's sentence for burglary—the qualifying circumstance—was *stayed* by the trial court under section 654. On appeal, the court in *People v. Alvarado* had no cause to review the stay *or* the basis for it.

provisions of section 667.61, discussed *post*, and not on section 654, subdivision (a), in determining that the 10-year term for personal gun use should have been stayed. (See *People v. Mancebo, supra*, 27 Cal.4th at p. 743.)

We agree that subdivision (f) of section 667.61, and not subdivision (a) of section 654, governs our analysis here. We reach this conclusion because unlike subdivision (a) of section 654, subdivision (f) of section 667.61 is the operative provision *within* the one strike law. Although subdivision (f) of section 667.61 and subdivision (a) of section 654 appear similar in operation, there are some important differences. Subdivision (f) of section 667.61 applies only to one or more "circumstances" specified in subdivisions (d) and (e) (discussed *post*). Subdivision (a) of section 654, however, is not so limited and instead applies more broadly to "acts" or "omissions."

We next turn to section 667.61 and its provisions to determine whether Byrd's sentence under count 1 should have been stayed.

3.   *Section 667.61*

■ " 'In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.] [¶] Additionally, however, we must consider the [statutory language under scrutiny] in the context of the entire statute . . . and the statutory scheme of which it is a part. "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" [Citations.]' " (*People v. Mancebo, supra*, 27 Cal.4th at p. 743.)

The version of subdivision (a) of section 667.61 applicable in 2005,[6] when Byrd committed the crimes at issue, provided in relevant part: "A person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years except as provided in subdivision (j)."

Former subdivision (c)(6) of then applicable section 667.61 stated this statute applies to "[s]odomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful

---

[6] Section 667.61 was twice amended in 2006 and again in 2010. (See Stats. 2006, ch. 337, § 33, eff. Sept. 20, 2006, amended by initiative (Prop. 83, § 12), Gen. Elec. (Nov. 7, 2006), operative Nov. 8, 2006; Stats. 2010, ch. 219, § 16, eff. Sept. 9, 2010 (now known as the Chelsea King Child Predator Prevention Act of 2010).)

bodily injury on the victim or another person." Former subdivision (d) of then applicable section 667.61 stated the "following circumstances shall apply to the offenses specified in subdivision (c): [¶] . . . [¶] (2) The defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c)."

Former subdivision (f) of section 667.61, as applicable to Byrd, provided: "If only the minimum number of circumstances specified in subdivision (d) or (e) which are required for the punishment provided in subdivision (a) or (b)[7] to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) . . . rather than being used to impose the punishment authorized under any other law, unless another law provides for a greater penalty. However, if any additional circumstance or circumstances specified in subdivision (d) . . . have been pled and proved, the minimum number of circumstances shall be used as the basis for imposing the term provided in subdivision (a), and any other additional circumstance or circumstances shall be used to impose any punishment or enhancement authorized under any other law. Notwithstanding any other law, the court shall not strike any of the circumstances specified in subdivision (d) . . . ."

### 4. "Kidnapping" Under Subdivisions (d)(2) and (e)(1) of Section 667.61

■ Kidnapping for the purpose of subdivision (d)(2) of section 667.61 is aggravated kidnapping. (See *People v. Martinez* (1999) 20 Cal.4th 225, 232 [83 Cal.Rptr.2d 533, 973 P.2d 512]; *People v. Diaz* (2000) 78 Cal.App.4th 243, 248–249 [92 Cal.Rptr.2d 682]; see also § 209, subd. (b)(2).) Indeed, the trial court here properly instructed the jury with CALCRIM No. 3175, which applies to "Sentencing Factors—Aggravated Kidnapping (Pen. Code, § 667.61(d)(2))" for purposes of the one strike law.

Under then applicable subdivision (f) of section 667.61, Byrd therefore could not be punished "under any other law" for aggravated kidnapping (unless of course the other law provided for a "greater penalty" as provided in that subdivision). This is because aggravated kidnapping was the *only* qualifying circumstance that was pled *and* proved for purposes of the one

---

[7] Former subdivision (b) of section 667.61, as then applicable, provided: "Except as provided in subdivision (a), a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years except as provided in subdivision (j)."

strike law, which "sets forth an alternative, harsher sentencing scheme for certain forcible sex crimes."[8] (*People v. Mancebo, supra,* 27 Cal.4th at p. 738.)

██ In contrast, under section 207, subdivision (a), "simple kidnapping" is when a "person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county . . . ." (§ 207, subd. (a); see also *People v. Jones* (2003) 108 Cal.App.4th 455, 462 [133 Cal.Rptr.2d 358].) Subdivision (e)(1) of section 667.61 specifically references section 207 as one of the kidnapping statutes that qualify as a minimum circumstance for one strike sentencing. (See § 667.61, subd. (e)(1).) Unlike aggravated kidnapping, simple kidnapping has three elements: "(1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance." (*People v. Jones, supra,* at p. 462.)

### 5. Analysis

We conclude there was no error when the trial court sentenced Byrd under section 667.61, subdivisions (c), (d)(2) (count 3) and refused to stay his sentence for violation of section 207, subdivision (a) (count 1).

██ First, we note that section 667.61 itself distinguishes between, and separately lists the "circumstances" of, aggravated and simple kidnapping. (See *People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168] ["The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' "]; see also *People v. Roberts* (2010) 184 Cal.App.4th 1149, 1176 [109 Cal.Rptr.3d 736].) As noted *ante,* subdivision (d)(2) of section 667.61 refers to aggravated kidnapping, but subdivision (e)(1) of that same statute expressly excludes subdivision (d)(2) *and* includes simple kidnapping as one of the qualifying circumstances: "*Except as provided in paragraph (2) of subdivision (d),* the defendant kidnapped the victim of the present offense in violation of *Section 207,* 209, or 209.5." (§ 667.61, subd. (e)(1), italics added.)

Second, we note that sections 207 and 209, as then applicable, recognized the distinction between these two statutes as they pertained to the one strike

---

[8] As noted *ante,* the People also pled but did *not* prove former subdivision (e)(4) of section 667.61, the enhancement that defendant personally used a dangerous or deadly weapon or a firearm in the commission of the offense provided in subdivision (c) of section 667.61.

law and punishment. Former subdivision (b) of section 209, as then applicable, provided: "(1) Any person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy, or sexual penetration in violation of Section 289, shall be punished by imprisonment in the state prison for life with possibility of parole. [¶] (2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."

Former subdivision (d) of section 209, as then applicable, specifically addressed the application of subdivision (b) of that statute to the one strike law. Former subdivision (d) of section 209, as then applicable, stated: "Subdivision (b) shall not be construed to supersede or affect Section 667.61. A person may be charged with a violation of subdivision (b) and Section 667.61. However, a person may not be punished under subdivision (b) and Section 667.61 for the same act that constitutes a violation of both subdivision (b) and Section 667.61." *There is no similar provision in section 207.*

■ Third, in construing subdivision (f) of section 667.61, as we have noted, this subdivision uses the words "that circumstance" or "those circumstances" enumerated in subdivisions (d) and (e), as opposed to the words "act" or "omission" found in subdivision (a) of section 654. Thus, based on the plain language of the statute, we focus on circumstances, as opposed to the acts underlying them. As we have noted, section 667.61 distinguishes between, and includes both, aggravated and simple kidnapping as "circumstances." (See § 667.61, subds. (d)(2), (e)(1), respectively.)

■ Because Byrd's sentence under the one strike law was premised on *aggravated kidnapping* for commission of sexual crimes as provided in subdivisions (c) and *(d)(2)* of section 667.61, and *not* on *simple kidnapping* in violation of section 207, subdivision (a) as provided in subdivisions (c) and *(e)(1)* of section 667.61, we conclude on the facts before us there was no error when the trial court refused to stay Byrd's sentence for the simple kidnapping of victim 1 under count 1.[9]

---

[9] Although we conclude section 667.61, subdivision (f) and not section 654, subdivision (a) governs our case, even if we assumed otherwise and found that section 654, subdivision (a) applies here (see *People v. Ahmed* (2011) 191 Cal.App.4th 1407, 1414 [120 Cal.Rptr.3d 356] [noting there is a split of authority regarding whether § 654 applies to "some enhancements under some circumstances"]), on this record we still would affirm. Substantial evidence supports the trial court's finding that Byrd's *act* of kidnapping victim 1 and victim 2 at gunpoint, forcing victim 1 to drive to various locations in Byrd's quest to obtain drugs and/or to locate a friend, was separate and distinct from his *act* of forcing victim 1 to drive to a remote location, after letting victim 2 out of the pickup, forcing victim 1 at gunpoint to walk with Byrd to a deserted, unlighted trailer in a remote area, and after Byrd smoked methamphetamine and, after about an hour went by, sodomizing victim 1 on the floor of the trailer while

B. *Consecutive and Concurrent Sentencing*

Byrd next contends the trial court abused its discretion because it believed it was *required* to impose consecutive sentences on Byrd when in fact the court could have exercised its discretion and imposed concurrent sentences on all counts (except count 4, which was stayed).

1. *Brief Background*

Before sentencing, defense counsel asked the trial court to consider giving Byrd concurrent sentences: "[Defense counsel]: Just the last thing I would ask the court to at least consider is giving Mr. Byrd concurrent sentences in this matter, given that the crimes were, in fact, committed during the same course of conduct."

The trial court proceeded to sentence Byrd. After sentencing Byrd to 95 years to life in prison on count 3, the principal count, the court sentenced Byrd to 35 years to life on count 1 and noted that term was "to be served consecutively to Count 3 pursuant to Penal Code Section 667(c)(7)." The court announced the same sentence on count 2, which involved the simple kidnapping of victim 2, and again repeated the term was to be served consecutively to count 3. The court then said, "all the consecutive sentences are due to Penal Code section 667(c)(7)." After staying the sentence on count 4 based on section 654, subdivision (a), the court sentenced Byrd to 25 years to life for violation of section 12022, subdivision (a)(1), a convicted felon in the possession of a firearm.

2. *Governing Law*

■ The three strikes provisions require, among other things, that "[i]f there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court *shall* sentence the defendant consecutively on each count pursuant to

---

under the influence of the drug. (See *People v. Massie* (1967) 66 Cal.2d 899, 908 [59 Cal.Rptr. 733, 428 P.2d 869] ["A defendant may not bootstrap himself into section 654 by claiming that a series of divisible acts, each of which had been committed with a separate identifiable intent and objective, composes an 'indivisible transaction.' "]; see also *People v. Britt* (2004) 32 Cal.4th 944, 952 [12 Cal.Rptr.3d 66, 87 P.3d 812] ["[C]ases have sometimes found separate objectives when the objectives were . . . consecutive even if similar . . . ."]; *People v. Surdi* (1995) 35 Cal.App.4th 685, 689 [41 Cal.Rptr.2d 314] [multiple offenses were not subject to § 654 where "they were separated by considerable periods of time during which reflection was possible"]; *People v. Andra* (2007) 156 Cal.App.4th 638, 640 [67 Cal.Rptr.3d 439] [In reviewing a defendant's claim that the court erred in failing to stay a sentence pursuant to § 654, the "defendant's intent and objective present factual questions for the trial court, and its findings will be upheld if supported by substantial evidence."].)

[this section]." (§ 667, subd. (c)(6), italics added; see also *People v. Hendrix* (1997) 16 Cal.4th 508, 513–515 [66 Cal.Rptr.2d 431, 941 P.2d 64].) In addition, "[i]f there is a current conviction for more than one serious or violent felony as described in [subdivision (c)(6)], the court *shall* impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." (§ 667, subd. (c)(7), italics added.)

By implication, a trial court has discretion to impose concurrent sentences only "if the multiple current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " (*People v. Hendrix, supra,* 16 Cal.4th at pp. 513–515; see also *People v. Lawrence* (2000) 24 Cal.4th 219, 233 [99 Cal.Rptr.2d 570, 6 P.3d 228].) Crimes are committed "on the same occasion" when there is close "temporal and spatial proximity between the acts underlying the current convictions." (*People v. Deloza* (1998) 18 Cal.4th 585, 595 [76 Cal.Rptr.2d 255, 957 P.2d 945].) Crimes " 'aris[e] from the same set of operative facts' " depending on "the extent to which common acts and elements of such offenses unfold together or overlap, and the extent to which the elements of one offense have been satisfied, rendering that offense completed in the eyes of the law before the commission of further criminal acts constituting additional and separately chargeable crimes." (*People v. Lawrence, supra,* at p. 233.) The determination of whether consecutive sentences are mandatory under the three strikes law is *not* governed, however, by a section 654, subdivision (a) analysis of whether the defendant had multiple criminal objectives during an otherwise individual course of conduct. (*People v. Deloza, supra,* at p. 593.)

### 3. *Analysis*

Here, we conclude sentencing on counts 1 and 3, both of which involved victim 1, required mandatory consecutive sentences because each count was neither "committed on the same occasion" nor "[arose] from the same set of operative facts." (See *People v. Hendrix, supra,* 16 Cal.4th at pp. 513–515.) The simple kidnapping (count 1) against victim 1 was complete by the time Byrd "agreed" to let victim 2 go, after Byrd held a gun on the two boys while they all drove in victim 1's pickup. In addition, the separate crime of forcible sodomy (count 3) took place hours later, in a trailer in a remote and different location than the simple kidnapping, after Byrd made victim 1 drive to various locations, stop the pickup, at gunpoint walk to, and go inside, the unlighted trailer and after Byrd had smoked methamphetamine for about an hour. Because we conclude counts 1 and 3 were not committed on the same occasion nor arose out of the same set of operative facts for purposes of subdivision (c)(6), (7) of section 667, the trial court had no discretion to impose concurrent terms. (See *People v. Lawrence, supra,* 24 Cal.4th at p. 226.)

We reach the same conclusion with regard to counts 2 and 3. The simple kidnapping of victim 2 was independent of the sodomy of victim 1, which occurred, as we have noted, hours after Byrd "agreed" to let victim 2 go, in a location different from the simple kidnappings. Because we conclude counts 2 and 3 were neither committed on the same occasion nor arose out of the same set of operative facts for purposes of subdivision (c)(6), (7) of section 667, the trial court lacked discretion to impose concurrent terms. (See *People v. Lawrence, supra*, 24 Cal.4th at p. 226.)

Finally, with regard to count 5, a felon in possession of a firearm, the People concede the trial court had discretion to sentence Byrd concurrently on this count, inasmuch as Byrd used the .22-caliber rifle during the simple kidnapping of victim 1 and victim 2 (counts 1 and 2, respectively), and during the aggravated kidnapping and forcible sodomy of victim 1 hours later (count 3).[10]

In connection with count 5, the trial court sentenced Byrd as follows: "THE COURT: For the violation of Penal Code Section 12022(a)(1), convicted felon in possession of a firearm as charged in Count 5 of the Information, the defendant is sentenced to state prison of the state of California for the indeterminate term of 25 years to life pursuant to Penal Code Section 667(e)(2)(A)(ii). This term is to be served consecutively to Count 3 *for the reasons stated above.*" (Italics added.) The italicized language presumably refers to the trial court's earlier statement, made during sentencing on count 2, that "all the consecutive sentences are due to Penal Code Section 667(c)(7)."

We conclude the trial court's reference to subdivision (c)(7) of section 667 strongly suggests the court did not believe it had discretion to sentence Byrd concurrently on count 5, inasmuch as that provision states in part the court "*shall* impose the sentence for each conviction *consecutive* to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." (Italics added.) Because the trial court had discretion to sentence Byrd concurrently and because the trial court's reasoning suggests it did not understand it had such discretion and/or that it properly exercised that discretion, we remand the matter for a new sentencing hearing only on count 5. (See *People v. Hall* (1998) 67 Cal.App.4th 128, 137 [79 Cal.Rptr.2d 690] [remand required where record failed to disclose whether trial court understood it had discretion to impose concurrent terms].)

---

[10] Although the jury did not find true the circumstance in former subdivision (e)(4) of section 667.61 that Byrd personally used a dangerous or deadly weapon or a firearm in the commission of count 3, it did find true the enhancement in section 12022.53, subdivision (b) that Byrd personally and intentionally used a gun during the commission of count 3.

## DISPOSITION

The judgment is reversed only as it pertains to the sentence imposed on Byrd on count 5. On remand, the trial court is directed to exercise its discretion and determine whether Byrd's sentence on count 5 is consecutive or concurrent. In all other respects, the judgment of conviction is affirmed.

McDonald, J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 20, 2011, S193155.