Filed 5/2/13  P. v. Landaverde CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B241431 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA082395) |
| v. | |
| JESSE SOLIS LANDAVERDE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Eric C. Taylor, Judge.  Affirmed as modified, and remanded with directions.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Jesse Solis Landaverde appeals from his conviction of forcible oral copulation, second degree robbery and kidnapping for carjacking. He contends: (1) allowing a uniformed officer to stand next to defendant while he testified was prejudicial error; (2) the jury was not properly instructed on a kidnapping special circumstance attached to the oral copulation charge (Pen. Code, § 667.61, subd. (a)); and (3) the life sentence imposed on the kidnapping for carjacking conviction was an unauthorized sentence.[1] We modify the judgment to stay the sentence on the kidnapping for carjacking conviction, but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant's contentions make a detailed recitation of the facts unnecessary. It is sufficient to state that, viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358), the evidence established that at about 10:00 a.m. on December 28, 2007, defendant accosted the victim at knife point in a parking lot as she was leaving her car to go into her place of business. After the victim complied with defendant's demand that she give him her keys and purse, the defendant snatched a necklace from her neck. Defendant next instructed the victim to sit in the driver's seat of her car and forced her to orally copulate him while he stood next to the open driver's side car door. At defendant's instruction, the victim got into the back seat of her car. Once she had done so, defendant drove the car out of the parking lot. The victim was eventually able to open the rear passenger door and escape. Police arrived within minutes of a call to 911. They brought the victim to a hospital where she underwent a sexual assault examination during which DNA from an unknown male was collected from her person. The victim's car was recovered about two weeks later; her purse was in it but her wallet, money and cell phone were missing.

More than four years later defendant's DNA was matched with the DNA recovered from the victim. He was charged with forcible oral copulation (count 1),

---

[1] All future undesignated statutory references are to the Penal Code.

2

second degree robbery (count 2), carjacking (count 3) and kidnapping for carjacking (count 4). Enhancements for personal use of a deadly weapon (§ 12022, subd. (b)(1)) were alleged as to all counts; as to count 1, a section 12022.3, subdivision (a) deadly weapon use enhancement and a section 667.61, subdivision (e)(1) kidnapping special circumstance were also alleged.

At trial, the victim positively identified defendant as her assailant. She had been unable to positively identify defendant from a photographic lineup and at the preliminary hearing she had testified that he "resembled" her attacker. An expert testified that defendant's DNA was compared to the unknown male's DNA collected during the sexual assault examination. Defendant could not be excluded as the contributor of that DNA. Defendant was Hispanic and the probability of finding a random unrelated Southwestern Hispanic who could not be excluded was one in 409,800; the probability of finding a random unrelated Southeastern Hispanic was one in 460,200. The odds increased for unrelated African-Americans and Caucasians, but decreased for unrelated Asians. Defendant testified that he was not the person who assaulted the victim; he maintained he had never seen her before these criminal proceedings.

The jury convicted defendant on all counts and found true the gun use enhancements and the kidnapping special circumstance. Defendant was sentenced to a total of 27 years to life in prison comprised of 25 years to life on count 1 (forcible oral copulation) based on the deadly weapon use and kidnapping special circumstances (§ 667.61, subd. (e)(1) & (3)), plus a consecutive two-year low term on count 2 (robbery), plus a consecutive life with the possibility of parole term on count 4 (kidnapping for carjacking). The trial court dismissed count 3 (carjacking) in the interest of justice pursuant to section 1385. Defendant timely appealed.

**DISCUSSION**

A.    *The Trial Court's Failure to State Reasons For Placing a Deputy Next to Defendant While He Testified Was an Abuse of Discretion, But Harmless*

Defendant contends it was an abuse of discretion for the trial court to maintain a general policy of having a deputy stand next to a testifying criminal defendant, rather than deciding whether such a security measure is necessary on a case-by-case basis. We agree that adhering to such a general policy without articulating reasons for its application in a specific case is an abuse of discretion, but find the error harmless under the circumstances.

We review for abuse of discretion the trial court's exercise of its broad powers to maintain courtroom security. (*People v. Hernandez* (2011) 51 Cal.4th 733, 741 (*Hernandez*); *People v. Stevens* (2009) 47 Cal.4th 625, 632 (*Stevens*).) Some extraordinary security practices – e.g. visible physical restraints, prison clothing – have such an inordinate risk of infringing on a criminal defendant's right to a fair trial that they must be justified by a showing of manifest need sufficient to overcome the risk of prejudice. (*Stevens,* at p. 632.) The presence of armed guards is not such a practice. "[A] deputy's presence at the witness stand during a defendant's testimony is not inherently prejudicial." (*Id*. at p. 638.) "Unless they are present in unreasonable numbers, [the presence of armed guards] need not be justified by the court or the prosecutor." (*People v. Duran* (1976) 16 Cal.3d 282, 291, fn. 8.) This is consistent with *Holbrook v. Flynn* (1986) 475 U.S. 560, 568-569, in which the United States Supreme Court held that the "conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial" is not "the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential interest specific to each trial."

In *Stevens,* the court held that, although not inherently prejudicial, the stationing of an armed guard next to a testifying criminal defendant is not immune from the trial court's duty to "exercise its own discretion to determine whether a given security

4

measure is appropriate on a case-by-case basis. [Citations.] . . . The trial court should state its reasons for stationing a guard at or near the witness stand and explain on the record why the need for this security measure outweighs potential prejudice to the testifying defendant. In addition, although we impose no sua sponte duty for it to do so, the court should consider, upon request, giving a cautionary instruction, either at the time of the defendant's testimony or with closing instructions, telling the jury to disregard security measures related to the defendant's custodial status. [Citation.]" (*Stevens*, *supra*, 47 Cal.4th at p. 642.)

In *Hernandez, supra*, 51 Cal.4th at page 736, our Supreme Court recently held that it is an abuse of discretion to defer to a general policy of stationing a deputy at the witness stand during a criminal defendant's testimony without articulating a case-specific reason why it is a necessary security measure. However, the *Hernandez* court found the error harmless under *People v. Watson* (1956) 46 Cal.2d 818, reasoning that the defendant wore street clothes, did not enter the court room through a different door and, other than the deputy's presence, the jury had little indication that defendant was in protective custody. Additionally, nothing in the record in that case suggested that the deputy's demeanor was anything other than respectful and appropriate. (*Hernandez,* at p. 746.)

Here, the trial court and defense counsel engaged in the following colloquy after defendant announced that he was going to testify:

> "THE COURT: . . . When there is somebody in custody, the bailiff stands with the defendant at the stand. Would you like a comment on that? Do you think it's required? There's a case . . . that discussed what we are supposed to do. I can look it up, but the bailiff will be standing there. [¶] [DEFENSE COUNSEL]: I understand. For purposes of the record we would object because it's his testimony and it makes him appear scary. I will submit. [¶] THE COURT: Okay. I could tell them to ignore the bailiff but, again, that highlights the fact that there's a bailiff standing there. [¶] [DEFENSE COUNSEL]: Whatever your practice is is fine with me. [¶] THE COURT: Any objection [to] my saying nothing? [¶]

5

[DEFENSE COUNSEL]: Am I objecting – [¶] THE COURT: Is there any objection to my saying nothing with respect to the bailiff, People? [¶] [THE PROSECUTOR]: Submitted."

Immediately following this discussion, the defendant was brought to the stand outside the presence of the jury. After the jury was re-seated and the prosecutor announced that the People were resting their case, the defendant testified. There is no reason to doubt that the trial court followed through with its stated intention to have the bailiff "stand with the defendant" during his testimony.[2]

From the exchange between the court and counsel, it appears that the trial court had a general policy of having the bailiff stand next to a testifying criminal defendant. Although not inherently prejudicial under *Stevens*, as the *Hernandez* court stated, it was an abuse of discretion for the trial court to rely solely on such a policy without articulating why such a security measure was necessary in this case. The trial court's solicitation of comments *from counsel* on the policy was not sufficient to satisfy the *trial court's* obligation to articulate case-specific reasons for following the general policy.

Nevertheless, we find the error harmless under the *Watson* standard because it is not reasonably probable that the defendant would have obtained a more favorable result absent the error. The defendant was escorted to and from the witness stand outside the presence of the jury; nothing suggests that he was not in street clothes. Further, nothing in the record suggests the bailiff was anything other than respectful and appropriate. Nor was the case close on the facts. Although unable to identify defendant from a photographic lineup, at the preliminary hearing the victim said defendant resembled her attacker, and she positively identified defendant at trial. DNA evidence corroborated the

---

**2**      The record does not indicate exactly where the bailiff was positioned during defendant's testimony and defendant does not contend the bailiff did not maintain a respectful distance or that he behaved in a manner that distracted from, or cast doubt on defendant's testimony.

victim's identification. Under these circumstances, defendant has failed to establish prejudice from the error.**3**

B.  *The Trial Court Correctly Instructed on the Kidnapping Special Circumstance*

On count 1 (forcible oral copulation), defendant was charged with a kidnapping "special" circumstance under the "One Strike" law which establishes increased punishment for certain sex offenders. (See § 667.61, subd. (a), (c)(7) & (e)(1).) Defendant challenges the following instruction given pursuant to CALCRIM No. 3179 regarding that special circumstance:

> "If you find the defendant guilty of the crime charged in Count 1 [forcible oral copulation], you must then decide whether, for each crime, the People have proved the additional allegation that the defendant kidnapped [the victim]. . . . [¶] To decide whether the defendant kidnapped [the victim], please refer to the separate instructions that I have given you on kidnapping for carjacking. You must apply those instructions when you decide whether the People have proved this additional allegation. [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

He contends the instruction was incorrect because it did not instruct that the kidnapping "had to be committed for the purpose of committing the oral copulation and/or that there had to be a nexus between the two crimes in that defendant committed the sex offense during or in the commission of kidnapping." That is not the law. A virtually identical

---

**3**     On appeal, defendant argues that the error violated his federal Constitutional right to due process and a fair trial. But the objection that the presence of the bailiff would make defendant "look scary" was not sufficient to assert a constitutional claim. As such, defendant has waived his right to raise such a claim on appeal. (Cf. *People v. Burgener* (2003) 29 Cal.4th 833, 869.) Even if cognizable, we would find the error harmless under *Chapman v. California* (1967) 386 U.S. 18, 24.

7

contention was recently rejected by the court in *People v. Luna* (2012) 209 Cal.App.4th 460 (*Luna*).**4** We find the reasoning of that case persuasive and adopt it here.

Section 667.61 "was enacted to ensure that serious sexual offenders receive long prison sentences regardless whether they have any prior criminal convictions. [Citation.]" (*Luna, supra*, 209 Cal.App.4th at p. 465.) Subdivisions (a) and (c)(7) of the statute impose a 25-year-to-life sentence on any person convicted of forcible oral copulation "under . . . two or more of the circumstances specified in subdivision (e) . . . ." Relevant here is subdivision (e)(1), which identifies the following special circumstance: ". . . the defendant kidnapped the victim of the present offense in violation of" section 209.5 (kidnapping during commission of carjacking).**5**

The defendant in *Luna* argued that imposition of the indeterminate term under section 667.61, subdivision (e)(1) required the jury to find he kidnapped the victim with the intent to rape her and that CALCRIM No. 3179 was inadequate because it did not require the jury to make the specific intent finding. (*Luna, supra,* 209 Cal.App.4th at p. 464.) The *Luna* court held that neither the plain language nor legislative history of section 667.61, subdivision (e)(1) required that the kidnapping have been for the intent or purpose of carrying out the sex offense. (*Id*. at p. 466.) First, the court reasoned that other subparts of subdivision (e) expressly require that the defendant commit the present offense "in the commission of" some other act or commit some other act "during the commission of the present offense," whereas subdivision (e)(1) has no such requirement. "This difference in language demonstrates the Legislature knew how to require a relationship or nexus between the sex offense and the circumstance identified in section

---

**4** The defendant in *Luna* challenged a 15-year-to-life sentence imposed under section 667.61, subdivision (b), whereas the defendant in this case challenges a 25-year-to-life sentence imposed under subdivision (a) of the same statute. We find the *Luna* analysis applies equally here.

**5** Kidnapping was one of two circumstances used to trigger the 25-year-to-life sentence set forth in section 667.61, subdivision (a). Defendant does not challenge the true finding on the section 12022.3, subdivision (a) deadly weapon enhancement, which was the second circumstance.

8

667.61, subdivision (e) when it wanted to create one. If the Legislature had intended to draft section 667.61(e)(1) to mean the defendant must have kidnapped the victim with the intent to commit a sex offense against the victim, the Legislature could and would have done so." (*Id*. at p. 467.) Second, the court recounted the legislative history of section 667.61, subdivision (e)(1) and found it supported its interpretation of the statute. (*Id*. at pp. 468-471.) In particular, a version of section 667.61, subdivision (e)(1) which required kidnapping with the intent of committing a sex crime never made it into the enacted version of the statute. (*Id*. at p. 471.) The court in *Luna* concluded: "It is reasonable to conclude the Legislature determined a defendant who kidnaps the victim, an act that consistently places the victim in a position of elevated vulnerability, and commits a sexual offense against the same victim, should meet the requirements of a serious and dangerous sex offender under section 667.61. The defendant is a serious and dangerous sex offender whose actions place the victim in a position of elevated vulnerability. If the defendant targets the same victim for multiple dangerous and serious felonies, heightened punishment at the time of sentencing comports with legislative intent." (*Id*. at p. 471.)

We agree with the analysis of the *Luna* court. Nothing in the plain language of the section 667.61, subdivision (e)(1) requires that the kidnapping had to be for the purpose of committing the sex offense, in this case oral copulation; the legislative history and purpose of the statue comports with that conclusion. Accordingly, the trial court's instructions were correct.

C. *The Sentence Imposed on the Kidnapping During a Carjacking Conviction Was Unauthorized*

Defendant contends and the People concede that the life with the possibility of parole sentence imposed on count 4 was an unauthorized sentence. We agree.

When only the minimum number of special circumstances required for the enhanced punishment under section 667.61, subdivision (a) are pled and proved, section 667.61, subdivision (f) requires sentence to be imposed only according to that

9

statute to the exclusion of any other provision of law, unless another provision provides for a greater punishment. Here, only the minimum two special circumstances for imposition of the 25-year-to-life punishment – use of a deadly weapon and kidnapping – were pled and proved. Therefore, defendant was required to be sentenced under section 667.61, subdivision (a) only and could not also be sentenced for the kidnapping for carjacking (count 4). (See *People v. Rodriguez* (2012) 207 Cal.App.4th 204, 215.)

Defendant and the People disagree as to the proper remedy for this sentencing error. Defendant argues the judgment on count 4 must be reversed and the matter remanded to the trial court for resentencing. The People request that we correct the error. We exercise our authority to modify the judgment by staying the sentence imposed on count 4. (Cf. *People v. Byrd* (2011) 194 Cal.App.4th 88, 101-102.)

## DISPOSITION

We modify the judgment by staying the sentence imposed on count 4 under section 667.61, subdivision (f). In all other respects the judgment is affirmed. The matter is remanded to the trial court with directions that the trial court prepare and forward to the Department of Corrections and Rehabilitation a certified copy of an amended abstract of judgment.


                                        RUBIN, J.
WE CONCUR:


        BIGELOW, P. J.


        FLIER, J.


10