Filed 5/26/16  P. v. Trejo CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PETE TREJO, JR. et al.,<br><br>    Defendants and Appellants. | B259298<br><br>(Los Angeles County<br>Super. Ct. No. KA089026) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ronald S. Coen, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant Pete Trejo Jr.

Charlotte E. Costan, under appointment by the Court of Appeal, for Defendant and Appellant Andrew Valenzuela.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

In early November 2009, Robert Caballero (Caballero) kidnapped a woman. While defendant Pete Trejo Jr. (Trejo) assisted him with the kidnapping one day, Caballero strangled a long-time female friend of his. While defendant Andrew Valenzuela (Valenzuela) assisted him with the kidnapping the next day, Caballero ordered Valenzuela to bludgeon Caballero's second cousin to death with a rock. Following their convictions for kidnapping and first-degree murder, as well as special circumstances, the trial court sentenced Trejo and Valenzuela to life in prison without the possibility of parole. Both received additional time for other enhancements. In this appeal, Trejo and Valenzuela challenge several of the jury instructions, the sufficiency of the evidence supporting some counts and enhancements, the trial court's admission of Caballero's statement to police, and also allege prosecutorial misconduct. We conclude there was no instructional error, no evidentiary error and no prosecutorial misconduct, and affirm all of the convictions. We further conclude there was no error as to Valenzuela's sentence. Because, as the People concede, there was insufficient evidence to support the jury's finding that Caballero "used" a firearm during the kidnapping he committed with Trejo, we remand for resentencing to give the trial court the opportunity to consider whether to impose an alternative sentencing enhancement.

## FACTS AND PROCEDURAL BACKGROUND

I.      **Facts**

A.      *Kidnapping of Jessica Garcia*

Caballero is a member of the 12th Street Sharks gang in Pomona. In October 2009, he went to Las Vegas and returned to Pomona with a woman he met there, Jessica Garcia (Garcia). Although their relationship started out consensual, once Caballero returned to Pomona, he beat Garcia repeatedly, played Russian roulette with her, injected her with methamphetamines against her will, raped her, and prostituted her to others. Garcia was "terrified" of him, and felt that leaving him was not an "option."

B.      *Strangulation of Lorainne Minjarez*

Caballero had known Lorainne Minjarez (Minjarez) for years. On November 5, 2009, Minjarez told Caballero that she knew he had "run" to Las Vegas because he had

2

been involved in the murder, the month before, of Armando Vidana (Vidana); Minjarez said she was going to report him to the police. When Caballero relayed this conversation to his second cousin, David Padilla (Padilla), Padilla said that Minjarez would "rat." When Caballero realized that Garcia had overheard this conversation, Caballero said that he would kill her and "take care of that bitch, too." Caballero also threatened to kill Garcia's family if Garcia warned Minjarez.

Caballero then sent a text message to Trejo, a fellow member of the 12th Street Sharks gang. Caballero asked Trejo to "help [him] with that thing" and stated, "Now I need you." Caballero explained that he had "two hoes that [were talking] about [his] bike ride" and that he needed to "fix it." Caballero had been riding on a bicycle and asking about Vidana moments before Vidana was gunned down. When Caballero asked if Trejo knew what he meant, Trejo responded, "GT THT."

Soon thereafter, one of Caballero's cousins arrived in a car. Padilla retrieved a shovel, broke the handle, and placed the shovel in the back of the car. Caballero then got into the car with Garcia and Minjarez. The cousin drove a few blocks and picked up Trejo, who was waiting curbside; Trejo said nothing when he got into the car. As the cousin drove everyone to Mount Baldy, Caballero flirted with Minjarez and joked with her that he would have her car by that night; Minjarez just laughed. Trejo and Garcia remained silent.

The cousin pulled into a roadside turnout, and all of the passengers got out. Trejo retrieved the shovel, and the cousin drove off.

Caballero, Minjarez and the others picked a path through the chaparral away from the turnout. As they walked, Trejo tested the dirt with the shovel "a couple of times." When Minjarez saw what Trejo was doing, she told Caballero she wanted to go back. Caballero then asked her what she thought of death and began pushing her forward along the path. When the group was approximately a quarter of a mile away from the turnout, Caballero or Trejo determined that the "dirt was rich." Caballero ordered Minjarez and Garcia to sit on a nearby rock. As Trejo began digging a grave, Caballero asked the women how they wanted to die—by gunshot, by strangulation, or by being "chopped up."

3

Minjarez began to sob, asking why. Caballero replied that she knew too much and that he "had to do it." As Minjarez and Garcia looked on, Caballero and Trejo took turns digging the grave.

Someone slipped a rope around Minjarez's neck. Trejo led Garcia, her wrists bound, behind a rock, leaving Caballero with Minjarez. Garcia heard Caballero tell Minjarez that he loved her and that it was "for the best" before he announced that "it's time." Garcia heard the sound of feet scuffling on the dirt as Caballero said, "Go to sleep" again and again. A few minutes later, the scuffling stopped.

Caballero whistled. Trejo eventually led Garcia back around the rock, where she saw Minjarez lying face down in the dirt, dead. Caballero then ordered Garcia to cut the rope away from Minjarez's neck, to stab Minjarez 18 times in the neck, and to urinate on her body so that Garcia's DNA would be left behind. Caballero led Garcia back to the turnout, as Trejo remained behind to bury Minjarez's body in a shallow grave.

### C. Bludgeoning of Padilla

The next day, Caballero told Garcia that he, Padilla and Valenzuela, another member of the 12th Street Sharks gang, were going to kill her. Caballero and Valenzuela exchanged six phone calls and one text message. Caballero took Garcia to Valenzuela's residence, and Valenzuela expressed no surprise when they arrived. The three men stepped into another room for five minutes, and when they emerged, Padilla announced that he would kill Garcia to prove his "loyalty." As Valenzuela watched, Caballero ordered Padilla to punch Garcia in the mouth; Padilla complied.

Caballero, Padilla, Valenzuela and Garcia drove to a freeway underpass. As they drove, Caballero held Garcia at gunpoint in the back seat. Once they arrived, Caballero whispered to Garcia, "Watch what's going to happen." Caballero then ordered everyone on their knees, and told Valenzuela to strangle Padilla. When Valenzuela balked, Caballero threatened to shoot Valenzuela. Valenzuela proceeded to wrestle with Padilla half-heartedly, and Caballero grew impatient. Caballero refused Valenzuela's request for a gun to shoot Padilla, and instead told Valenzuela to hit Padilla in the head with a rock. Valenzuela then began to bludgeon Padilla in the head with a nearby 15- to 20-pound

4

rock, splattering blood everywhere. Caballero did not wait for Valenzuela to finish; he led Garcia away as the assault continued. Padilla died from blunt force injuries to the head, along with strangulation.

## II.    Procedural History

The People charged Caballero and Trejo with (1) the kidnapping of Garcia (Pen. Code, § 207)[1], and (2) the murder of Minjarez (§ 187). The People further alleged two special circumstances to render the murder eligible for the death penalty or life without possibility of parole—namely, that the murder was committed by lying in wait (§ 190.2, subd. (a)(15)) and committed in the course of the kidnapping (§ 190.2, subd. (a)(17)). The People also alleged that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)), and that that a principal used a firearm (§ 12022.53, subds. (b) & (e)(1)). The People alleged Trejo's 2005 conviction for discharging a firearm in a grossly negligent manner as a "strike" within the meaning of the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior "serious" felony (§ 667, subd. (a)(1)), and that Trejo had served a prior prison term (§ 667.5, subd. (b)) for his 2002 felony conviction for brandishing a firearm to a peace officer (§ 417, subd. (c)).

The People charged Caballero and Valenzuela with (1) the kidnapping of Garcia (§ 207), and (2) the murder of Padilla (§ 187). As with the prior murder, the People alleged two special circumstances—lying in wait (§ 190.2, subd. (a)(15)) and in the course of a kidnapping (§ 190.2, subd. (a)(17))—as well as the gang enhancement (§ 186.22, subd. (b)(1)) and a principal's use of a firearm (§ 12022.53, subds. (b) & (e)(1)). The People further alleged that Valenzuela had two prior robbery convictions from 2008.[2]

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]    The People also charged Caballero with the murder of Vidana (§ 187), with assault with a deadly weapon arising out of a shoot-out (§ 245, subd. (b)), being a felon in possession of a firearm (§ 12021, subd. (a)(1)), and felony evasion of a police officer

Following trial, the jury convicted Trejo of kidnapping and first-degree murder, found true both the special circumstances elevating the sentence to death or life without possibility of parole, and found true the gang and firearm allegations. The jury also convicted Valenzuela of kidnapping and first-degree murder, found true the kidnapping (but not the lying-in-wait) special circumstance, and found true the gang and firearm allegations. In later proceedings, all of the prior convictions were found true as to both Trejo and Valenzuela.

The trial court sentenced Trejo to life in prison without the possibility of parole plus 16 years, comprised of 10 years for a principal's use of a firearm, five years for his prior "serious" felony conviction, and one year for the prior prison term. The court sentenced Valenzuela to life in prison without the possibility of parole plus 10 years for a principal's use of a firearm. As to both Trejo and Valenzuela, the trial court stayed the kidnapping count under section 654.

Trejo and Valenzuela timely appealed.

## DISCUSSION

### I.      Jury Instructions

A trial court is required to "instruct" the jury "'on general legal principles closely related to the case.'" (*People v. Williams* (2015) 61 Cal.4th 1244, 1263 (*Williams*), quoting *People v. DePriest* (2007) 42 Cal.4th 1, 50 (*DePriest*).) Because this requirement lies with the court, a litigant may object to instructions that misstate the general legal principles for the first time on appeal. (§ 1259.) However, a litigant's failure to request or otherwise object to an instruction that merely "'relate[s] particular facts to a legal issue in the case or "pinpoints" the crux of a defendant's case'"—a so-called "pinpoint" instruction—precludes objections raised for the first time on appeal. (*People v. Wilkins* (2012) 56 Cal.4th 333, 348-349.) Because jury instructions present a

_____

(Veh. Code, § 2800.2). Caballero was convicted of all counts in which he was charged, and sentenced to death. Because of that sentence, his automatic appeal lies with the Supreme Court (S224635).

question of law, our review is de novo. (*People v. Leeds* (2015) 240 Cal.App.4th 822, 830.)

## A. Instructions on lesser-included offenses

As part of its duty to properly instruct the jury, a trial court may be required, without any request, to instruct the jury not only on the elements of every charged offense, but also the elements of any lesser offenses that are necessarily included in each charged offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155 (*Breverman*); *People v. Birks* (1998) 19 Cal.4th 108, 117-118.) An offense is necessarily included in a charged offense—and is considered a "lesser-included offense"—when the charged offense "cannot be committed without also committing" the lesser-included offense. (*Birks*, at p. 117.) A court's duty to instruct on lesser-included offenses prevents a jury from being presented with "all-or-nothing verdict choices." (*Breverman*, at p. 155.) The duty reaches offenses that are predicate felonies for felony-murder where, as here, they are separately charged. (Cf. *People v. Cash* (2002) 28 Cal.4th 703, 736-737 [no such requirement where predicate offense is uncharged]; *People v. Silva* (2001) 25 Cal.4th 345, 371 [same].) However, the duty only applies when "'there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense.'" (*Williams*, *supra*, 61 Cal.4th at p. 1263, quoting *DePriest*, *supra*, 42 Cal.4th at p. 50.) Not all evidence is "substantial"; "substantial evidence" is "'evidence that a reasonable jury could find persuasive.'" (*Williams*, at p. 1263.) In this context, we are to resolve any conflicts in the evidence in the defendant's favor. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

## 1. False imprisonment as a lesser-included offense to kidnapping

Trejo and Valenzuela were charged with kidnapping both as a substantive offense and as a predicate felony under the felony-murder doctrine, which renders a defendant liable for murder as to any killing, by that defendant or his accomplices, that occurs during the commission of an inherently dangerous felony (*People v. Bryant* (2013) 56 Cal.4th 959, 965). Trejo argues that his kidnapping and first-degree murder

7

convictions should be reversed because the trial court erred in not instructing the jury on the crime of false imprisonment as a lesser-included offense to kidnapping. Valenzuela joins in this argument.

Felony false imprisonment is defined as "the unlawful violation of the personal liberty of another" "effected by violence, menace, fraud, or deceit" (§§ 236 & 237, subd. (a)), while simple kidnapping is defined as the use of physical force or fear to move a person a "substantial distance" without that person's consent (*People v. Byrd* (2011) 194 Cal.App.4th 88, 101 (*Byrd*); § 207).[3] In light of these definitions, it is well settled that false imprisonment is a lesser-included offense to kidnapping (e.g., *People v. Delacerda* (2015) 236 Cal.App.4th 282, 289; *People v. Apo* (1972) 25 Cal.App.3d 790, 796; *People v. Shadden* (2001) 93 Cal.App.4th 164, 171 [same, as to kidnapping for rape]; *People v. Eid* (2014) 59 Cal.4th 650, 656 [same, as to kidnapping for ransom]), and that kidnapping is the greater offense because it, unlike false imprisonment, requires that the victim be moved a substantial distance (*People v. Gibbs* (1970) 12 Cal.App.3d 526, 547; *People v. Magana* (1991) 230 Cal.App.3d 1117, 1120-1121; *Martinez*, *supra*, 20 Cal.4th at p. 232). In light of these principles, Trejo's and Valenzuela's claims of instructional error turn on whether there was enough evidence to enable a reasonable jury to conclude that Garcia—the kidnap victim in both instances—was not moved a substantial distance.

For purposes of simple kidnapping, a "substantial distance" is a movement that is "'substantial *in character*,'" not just in metrics. (*Martinez*, *supra*, 20 Cal.4th at pp. 235, 237, quoting *People v. Stanworth* (1974) 11 Cal.3d 588, 601, italics added.) The inquiry into substantiality looks to the totality of the circumstances, including (1) "'the actual distance the victim is moved,'" (2) "whether the movement" (a) "increase[d] the risk of harm above" that which existed prior to the movement, (b) "decreased [the] likelihood of detection," or (c) increased both "the danger inherent in [the] victim's foreseeable

---

[3]     Aggravated kidnapping (§ 209) is a distinct crime that additionally requires that the movement of the victim increases the risk of harm to the victim and not be merely incidental to another crime. (*People v. Martinez* (1999) 20 Cal.4th 225, 232 (*Martinez*).)

8

attempts to escape, and the attacker's enhanced opportunity to commit additional crimes," and (3) "whether the distance [the] victim was moved was incidental to the commission of" "an associated crime." (*Martinez*, at pp. 232-233, 237.) With simple kidnapping, the increase in harm is one of several factors to consider; it is not a prerequisite to criminal liability. (*Id.* at p. 236.)

Applying these standards, we conclude that no reasonable jury could conclude that the movement of Garcia—either by Trejo or Valenzuela—was anything but "substantial in character." Trejo asserts that his personal act of moving Garcia a few feet from the place where he was digging Minjarez's grave to the area behind the rock was not a substantial distance. But his argument overlooks that Trejo can also be held criminally liable, as an aider and abettor, for *Caballero's* movement of Garcia. The jury was instructed on this theory, and Trejo does not dispute that he aided and abetted Caballero on appeal. Nor could he. A person is liable as an aider and abettor if he (1) """"by act or advice aids, promotes, encourages or instigates, the commission of the crime,"""" (2) with """"knowledge of the unlawful purpose of the perpetrator,"""" and (3) """"with the intent or purpose of committing, encouraging, or facilitating the commission of the offense."""" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*).) Here, Trejo and Caballero exchanged text messages in which Caballero called in a favor to "fix" the "thing" arising out of the prior murder; Trejo grabbed the shovel from the car and walked with Caballero, Garcia and Minjarez down the path; Trejo, without a word, tested the dirt for ease of digging a grave as Caballero was threatening both Garcia and Minjarez; and Trejo personally escorted Garcia behind the rock so Caballero could strangle Minjarez out of Garcia's view. More to the point, a rational jury could not conclude that Garcia's movement was less than "substantial." Trejo and Caballero physically moved her a quarter of a mile off the turnout. This is a substantial physical distance that was far more than incidental to Minjarez's murder; bringing the two women to a more secluded locale also increased the risk of harm to Garcia and enabled Caballero and Trejo to commit additional crimes.

9

A similar analysis applies to Valenzuela's kidnapping of Garcia the next day. Although, as discussed below, Valenzuela disputes whether there was substantial evidence to support the jury's finding that he had the requisite intent and knowledge to aid and abet Garcia's kidnapping, he does not dispute that Garcia was transported a substantial physical distance in the car ride to the freeway underpass or that transporting her to that secluded location increased the risk of harm to Garcia and enabled he and Caballero to commit additional crimes.

In sum, the trial court did not err in declining to instruct the jury on the lesser-included offense of false imprisonment.

**2.     Second-degree murder as a lesser-included offense to first-degree murder**

Trejo and Valenzuela were charged with first-degree murder, and they argue that the jury should also have been instructed on the crime of second-degree murder as a lesser-included offense. Although second-degree murder is a lesser-included offense to first-degree murder (*People v. Anderson* (2006) 141 Cal.App.4th 430, 443), Trejo and Valenzuela's argument is without merit for the simple reason that the jury *was* instructed on second-degree murder.

The trial court instructed the jury that murder requires a finding that the defendant acted with "malice aforethought"; that there are two degrees of murder; that first-degree murder is a "murder . . . perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought," while second-degree murder is an "unlawful killing . . . with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation, lying in wait, or felony murder"; and that any doubts as to the degree of murder should be resolved in favor of a finding of second-degree murder. The verdict forms also left a blank for the jury to fill in the degree of murder it found.

Trejo and Valenzuela contend that the jury should have also instructed the jury with CALJIC No. 8.31, which defines second-degree murder as "the unlawful killing of a human being when:  [(1)] [t]he killing resulted from an intentional act;  [(2)] [t]he natural

10

consequences of the act are dangerous to human life; and [(3)] [t]he act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (CALJIC No. 8.31.) However, this precise language was included in the definition of "malice aforethought" on which Trejo and Valenzuela's jury was instructed. Not surprisingly, our Supreme Court in *People v. Chun* (2009) 45 Cal.4th 1172 concluded that the "malice aforethought" instruction given in this case (CALJIC No. 8.11) was sufficient to instruct on the crime of second-degree murder without CALJIC No. 8.31. (*Id.* at pp. 1201-1203.) Trejo argues that *Chun* is distinguishable because it addressed a conviction for second-degree murder, but what makes *Chun* relevant here is its conclusion that the same instructions given there (and here) adequately covers the law and renders CALJIC No. 8.31 unnecessary.

### B.     *Instructions on duress*

Valenzuela argues that the trial court erred in (1) not specifically instructing the jury that duress was a defense to kidnapping as a separately charged crime and as a defense to kidnapping as the predicate felony for felony-murder, and (2) declining to give a special instruction explaining that "the circumstances of duress are relevant to whether the evidence establishes the elements of premeditation and implied malice [because] [t]he reasons a person acted in a certain way, including threats of death, are relevant to whether the person acted with a conscious or wanton disregard for human life."

A person who commits a crime under duress—that is, "under threats or menaces sufficient to show that [he] had reasonable cause to and did believe [his] li[fe] would be endangered if [he] refused"—is not criminally liable for that crime. (§ 26, subd. (6); *People v. Wilson* (2005) 36 Cal.4th 309, 331.) Duress is not a defense to murder (*People v. Casares* (2016) 62 Cal.4th 808, 844 (*Casares*)), but can be a defense to the felony underlying a felony murder and can thereby preclude a murder conviction based on a felony-murder theory (*People v. Anderson* (2002) 28 Cal.4th 767, 784 (*Anderson*)).

Valenzuela's argument that the trial court should have specifically instructed the jury that duress is a defense to kidnapping is without merit because the jury instructions adequately conveyed that point. The trial court instructed the jury that "[a] person is not

11

guilty of a *crime other than malice murder* when he engages" in "criminal" "conduct" (1) "when acting under" "threats and menaces . . . that . . . would cause a reasonable person to fear that his life would be in immediate danger if he did not engage in the conduct charged," and (2) if the person "then actually believed that his life was so endangered." Because kidnapping is a "crime other than malice murder," this general instruction regarding the duress defense by its plain terms applied to the crime of kidnapping. Valenzuela suggests a further instruction was necessary because the court's duress instruction was not given immediately before or after the kidnapping instruction or the felony murder instruction, but this is of no moment: The jury was specifically instructed that "the order in which the instructions are given has no significance as to their relative importance," and we specifically review "the instructions as a whole" and "presume that jurors are intelligent and capable of correctly understanding, correlating, applying, and following the court's instructions." (*People v. Acosta* (2014) 226 Cal.App.4th 108, 119.) Indeed, Valenzuela's own attorney relied on the instructions, as given, to argue that Valenzuela committed the kidnapping while under duress.

Valenzuela's argument that the trial court should have given his special duress instruction also lacks merit. Although our Supreme Court in *Anderson* observed that "the circumstances of duress [are] relevant to whether the evidence establishes the elements of implied malice murder" (*Anderson*, *supra*, 28 Cal.4th at p. 779), that Court a few years later stated that "duress cannot, as a matter of law, negate the intent, malice or premeditation elements of a first degree murder" (*People v. Vieira* (2005) 35 Cal.4th 264, 290). We need not decide whether these two statements can be reconciled or whether Valenzuela's special instruction threads its way between them because, even if we assume the special instruction is entirely proper, it is duplicative of the instructions that allow for the consideration of duress except as to every crime but "malice murder."

In light of our conclusion, Valenzuela's counsel was not constitutionally ineffective with respect to seeking jury instructions as to duress. (See *Strickland v. Washington* (1984) 466 U.S. 668.)

## C.     *Instructions on special circumstances for life without possibility of parole*

Trejo and Valenzuela next argue that the trial court's instructions on the special circumstances that rendered them eligible for their sentences of life without the possibility of parole incorrectly stated the law.

A defendant convicted of first-degree murder may be sentenced to death or life imprisonment without the possibility of parole if a jury finds true one of several statutorily enumerated special circumstances.  (§ 190.2, subd. (a).)  Two of these special circumstances are that the (1) "[t]he defendant killed the victim by means of lying in wait" (§ 190.2, subd. (a)(15)), and (2) "[t]he murder was committed while the defendant was engaged in, or was an accomplice to, the commission of . . . [a] kidnapping" (§ 190.2, subd. (a)(17)(B)).

If the defendant was not the actual killer, but instead a person who aided and abetted the actual killer, the jury must also find that (1) the defendant acted "with the intent to kill" (§ 190.2, subd. (c)), or (2) if the defendant was an accomplice to one of the 12 offenses enumerated in subdivision (a)(17) of section 190.2, that (a) he was a "major participant" who acted "with reckless indifference to human life" (§ 190.2, subd. (d)), and (b) his primary or concurrent purpose was to commit one of the 12 offenses, instead of the other offense being "merely incidental to the murder" (*People v. Brents* (2012) 53 Cal.4th 599, 608-609).  However, the final requirement of an independent felonious purpose does not apply if the statutorily enumerated crime is kidnapping or arson and the defendant acted with the intent to kill.  (§ 190.2, subd. (a)(17)(M).)

Because there was no evidence introduced as to Trejo's and Valenzuela's purpose, the validity of the lying-in-wait and kidnapping special circumstances findings turns on whether the jury was instructed that it had to find that Trejo and Valenzuela acted with the intent to kill.

The jury was initially instructed:

"*Unless an intent to kill is an element of a special circumstance*, if you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you

13

need not find that the defendant intended to kill in order to find the special circumstance to be true.

"If you find that a defendant who was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of murder in the first degree, *or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the crime of kidnapping which resulted in the death of a human being*."

The jury was further instructed that the lying in wait special circumstance could be found true only if the defendant "intentionally killed the victim," and that the kidnapping special circumstance could be found true only if the defendant "had the specific intent to kill."

As to Valenzuela, the jury was properly instructed. He was the actual killer of Padilla, and the first italicized passage set forth above specifically told the jury that it should look to the special circumstance instructions to determine if an intent to kill was required. Because the instruction for each special circumstance required a finding of the intent to kill, the jury was properly instructed.

As to Trejo, the propriety of the jury instructions is a closer question. As explained above with respect to Valenzuela, the jury could—and probably would—have taken the cue from the first italicized passage set forth above that pointed the jurors to the instructions defining each special circumstance; looked to those instructions; and determined that an intent to kill was required. However, it is also possible to construe the first paragraph of the quoted instruction as pertaining only to a defendant who is the actual killer, and the second paragraph as pertaining to a defendant who is not. Because Trejo was not the actual killer of Minjarez, the jury could have found the first italicized passage inapplicable and instead proceeded to decide whether Trejo had the intent to kill

14

*or* was a major participant acting with reckless indifference, as the second italicized passage indicates. However, the jury was still tasked with determining whether the special circumstances themselves were true, which, as noted above, required a finding that Trejo acted with the intent to kill. The verdict form as to the lying-in-wait special circumstance, reinforced the requirement for a finding of an intent to kill because it stated that "the defendant *intentionally* killed the victim by means of lying in wait."

However, even if we conclude that the instructions are ambiguous as to whether the jury had to find that a nonkiller acted with the intent to kill (*People v. Odom* (2016) 244 Cal.App.4th 237, 256-257 & fn. 14 (*Odom*) [so noting, in dicta]), any instructional error was harmless. Because this error effectively omits an element, we assess whether the omission was harmless beyond a reasonable doubt by asking whether "the omitted element was uncontested and supported by overwhelming evidence." (*Neder v. United States* (1999) 527 U.S. 1, 17; *People v. Mil* (2012) 53 Cal.4th 400, 409.)

Here, it was. As explained above, Caballero asked for Trejo's assistance in "fix[ing]" the "thing" regarding "the two hoes" who were talking about Caballero's murder of Vidana; Trejo got into the car and retrieved the shovel from the car without a word; Trejo tested the dirt for softness as they walked down the path; Trejo began digging Minjarez's grave as Caballero explained his murderous intentions to Minjarez and Garcia; and Trejo then took Garcia to the side while Caballero strangled Minjarez. At no point did Trejo express surprise or hesitation. This is overwhelming evidence that Trejo knew of Caballero's plan to kill Minjarez and/or Garcia, and willingly assented to and participated in that plan. On appeal, Trejo argues that his DNA was not found on Minjarez's body, that his retrieval of the shovel did not mean he knew of the impending murder, that Garcia was not a believable witness, and that his text message exchange with Caballero was ambiguous. However, the presence of Trejo's DNA on Minjarez is irrelevant because Trejo was not the one who strangled her; Trejo's retrieval of the shovel was followed by his actions in testing the dirt along the path and stopping to dig a grave once the dirt was "rich" enough; Garcia's alleged lack of credibility is definitively refuted by the jury's verdicts, which necessarily credited Garcia's testimony; and the text

15

message exchange was not ambiguous when viewed in the context of Caballero's murder of Vidana and Trejo's actions after the text messages. Indeed, the prosecutor, while mentioning the portion of the jury instruction regarding "major participant" acting with "reckless indifference" in her closing argument, argued only that "Trejo was an aider and abettor with the intent to kill." Because the instructions here were at worst ambiguous, and because the evidence overwhelmingly supports the finding that Trejo acted with the intent to kill, the instructions provide no basis for reversal. (Accord, *Odom*, *supra*, 244 Cal.App.4th at pp. 251, 257 [finding similar error under CALCRIM Instructions to be harmless in light of overwhelming evidence as well as the jury's finding of intent to kill with respect to the torture special circumstance].)

## II. Sufficiency of the Evidence

In reviewing the sufficiency of the evidence to support a conviction, a special circumstance or an enhancement, our task is to assess "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*Nguyen*, *supra*, 61 Cal.4th at p. 1055, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) Not just any evidence will suffice; the evidence supporting the jury's finding must be "''"reasonable, credible, and of solid value."''" (*Casares*, *supra*, 62 Cal.4th at p. 823.)

### A. *Sufficiency of evidence supporting the finding that Valenzuela aided and abetted the kidnapping of Garcia*

Valenzuela argues that there was insufficient evidence to support the jury's finding that he aided and abetted Caballero in kidnapping Garcia.

As noted above, kidnapping occurs when (1) "'a person [is] unlawfully moved by the use of physical force or fear,'" (2) "'the movement [is] without the person's consent,'" and (3) "'the movement of the person [is] for a substantial distance.'" (*Byrd*, *supra*, 194 Cal.App.4th at p. 101.) A person aids and abets another in a crime if (1) "''"by act or advice, [he] promotes, encourages or instigates, the commission of [that] crime,"''" (2) with "''"knowledge of the unlawful purpose of the perpetrator,"''" and (3) with "''" the

16

intent or purpose of committing, encouraging, or facilitating the commission of the offense."'" (*Nguyen*, *supra*, 61 Cal.4th at p. 1054.) A person's "mere 'presence at the scene of a crime or failure to prevent its commission [is not] sufficient to establish aiding and abetting.'" (*People v. Richardson* (2008) 43 Cal.4th 959, 1024.)

There was sufficient evidence upon which a rational jury could find that Caballero kidnapped Garcia and that Valenzuela aided and abetted him in that kidnapping. With respect to whether Caballero kidnapped Garcia, Garcia testified that Caballero beat her, threatened to kill her and her family, injected her with drugs, and raped and prostituted her; she further testified that she was "terrified" of him and felt she had "no option" but to stay with him. "'[U]nless the testimony is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction.'" (*People v. Jones* (2013) 57 Cal.4th 899, 963, quoting *People v. Young* (2005) 34 Cal.4th 1149, 1181.) With respect to whether Valenzuela aided and abetted Garcia, Caballero exchanged calls and text messages with Valenzuela, a fellow gang member, prior to Caballero telling Garcia that he, *Valenzuela* and Padilla were going to kill her; Caballero took Garcia to Valenzuela's house; all three men immediately met in private for five minutes; right after they finished, Padilla walked out and announced, in earshot of Valenzuela, that he was ready to kill Garcia to prove his loyalty; and Valenzuela then accompanied Caballero, Padilla and Garcia in the car to the freeway underpass as Caballero held Garcia at gunpoint. This is sufficient evidence that Valenzuela's acts in offering his home as a meeting place and in accompanying Caballero in the car was done with the knowledge and purpose to kill Garcia. (See *Nguyen*, *supra*, 61 Cal.4th at p. 1054 [a defendant's "'presence at the scene of the crime, companionship, and conduct before and after the offense'" are relevant to show aiding and abetting].)

Valenzuela raises several challenges to this conclusion. He argues that Garcia was never kidnapped, and was instead voluntarily accompanying Caballero everywhere he went. She testified to the contrary and, as noted above, that is enough to sustain the jury's finding. Valenzuela contends that he did not know that Caballero was forcing Garcia to stay with him, and his mere presence—and even his membership in the same

17

street gang as Caballero—does not amount to aiding and abetting. Although "'gang evidence standing alone cannot prove a defendant is an aider and abettor to a crime'" (*Nguyen*, *supra*, 61 Cal.4th at p. 1055), Caballero told Garcia that Valenzuela was part of the plot to kill her; Caballero and Valenzuela thereafter met in private with Padilla; and Valenzuela was present moments later when Padilla announced he would be the one to kill Garcia to prove his loyalty. This is sufficient evidence for a jury to infer that Valenzuela knew of the plan to kill Garcia when he and Caballero transported her a substantial distance to the freeway underpass. Valenzuela lastly asserts that he was shocked when Caballero ordered and threatened him to kill *Padilla* (rather than Garcia), and that the kidnapping was still ongoing at that time (see *People v. Burney* (2009) 47 Cal.4th 203, 233 ["'the crime of kidnapping continues until such time as the kidnapper releases or otherwise disposes of the victim and (the defendant) has reached a place of temporary safety'"]). Regardless of whether or not the kidnapping had been "completed" by the time Caballero first threatened Valenzuela, by that point in time Garcia had been kidnapped (that is, she had been substantially moved without her consent) and Valenzuela had aided and abetted that kidnapping. The fact that Caballero changed the plan as to who would be murdered does not retroactively negate Valenzuela's criminal culpability prior to that change.

> **B.** ***Sufficiency of evidence supporting 10-year sentencing enhancement against Trejo for a principal's "use" of a firearm***

Trejo argues that the jury's finding that Caballero "used" a firearm while kidnapping Garcia prior to Minjarez's murder is not supported by substantial evidence.

A defendant is subject to a 10-year sentencing enhancement if, among other things, one of his accomplices "uses" a firearm during the commission of a kidnapping for the benefit of, at the direction of, or in association with a criminal street gang. (§§ 12022.53, subds. (a)(3), (b) & (e)(1)(B), 186.22, subd. (b).) For purposes of this enhancement, "use" means "'to carry out a purpose or action by means of,' [or] 'make instrumental to an end or process,' and to 'apply to advantage.'" (*People v. Smit* (2014) 224 Cal.App.4th 977, 987, quoting *People v. Chambers* (1972) 7 Cal.3d 666, 672.)

18

During the time when Garcia was being driven to Mount Baldy and escorted down the path away from the turnout, Caballero never "used" the gun in his possession. As a result, and as the People concede, there was insufficient evidence to support this enhancement.

The People and Trejo agree that the 10-year enhancement must be vacated and that the one-year enhancement for being "armed" with a firearm should be imposed in its stead. So do we. Section 12022 creates a one-year enhancement when a principal is "armed with a firearm in the commission of a felony" (§ 12022, subd. (a)(1)); a person is "armed" when he "has . . . [a] weapon available for use, either offensively or defensively" (*People v. Bland* (1995) 10 Cal.4th 991, 997); and Caballero had a firearm on his person when he drove with Trejo, Minjarez and Garcia up Mount Baldy and led the group away from the turnout. Because we may amend a charged enhancement for firearm "use" for an uncharged enhancement for being "armed" (*People v. Fialho* (2014) 229 Cal.App.4th 1389, 1395-1396), we will do so. We therefore order that the abstract of judgment for Trejo be modified to reflect the imposition of a one-year enhancement pursuant to section 12022, subdivision (a)(1), on counts 4 and 5, and strike from the abstract of judgment any reference to section 12022.53, subdivisions (b) and (e)(1).

The People further argue that we should remand the case to the trial court to consider, in light of our order vacating the "use" enhancement, whether to impose the 10-year enhancement under section 186.22, subdivision (b)(1)(B) because Trejo was convicted of the "violent felony" of murder for the benefit of, at the direction of, or in association with a criminal street gang. We will not remand for this purpose because where, as here, the "violent felony" has a minimum sentence of life imprisonment, the appropriate enhancement is not 10 additional years of custody but instead a 15-year minimum parole eligibility. (§ 186.22, subds. (b)(1) [deferring to subdivision (b)(5)] & (b)(5); *People v. Elizalde* (2015) 61 Cal.4th 523, 539, fn. 10; *People v. Lopez* (2005) 34 Cal.4th 1002, 1004.) Instead, we will remand so that the court may determine whether to impose this minimum parole eligibility term.

**III.    Remaining Claims**

### A.    *Evidentiary issue*

Valenzuela contends that the trial court erred in admitting Caballero's recorded statements to police at the joint trial of Caballero, Trejo and Valenzuela because it had a negative "spillover" effect on him.  We review this claim, like all challenges to evidentiary rulings, for an abuse of discretion.  (*People v. Leeds* (2015) 240 Cal.App.4th 822, 834.)

During a May 2008 interview with police (prior to the charged crimes), Caballero evinced some knowledge about DNA and DNA collection.  During a December 7, 2009 interview with police (after the charged crimes), Caballero stated he had no involvement in any of the charged crimes, and indicated his belief that Trejo and Valenzuela were "innocent" and wrongly accused of committing these crimes.  Caballero also admitted that he belonged to the Pomona 12th Street Shark gang, that his "loyalty is with those who are loyal to me," that "[j]ust because you're my family [] don't mean shit . . . Just because you're my grandma, who gives a fuck . . . They ain't going to be my weakness," and that he "only care[s] about [himself]."  The trial court admitted this evidence, but twice instructed the jury that Caballero's statements were "to be used only against defendant Caballero, not the other two defendants."

Valenzuela does not argue that Caballero's statements violate his Sixth Amendment confrontation clause rights under *People v. Aranda* (1965) 63 Cal.2d 518 and *Bruton v. United States* (1968) 391 U.S. 123 because the *Aranda-Bruton* doctrine only bars the introduction of "'a nontestifying codefendant's extrajudicial self-incriminating statement *that inculpates the other defendant*'" (*People v. Capistrano* (2014) 59 Cal.4th 830, 869, italics added) and Caballero's statements were exculpatory as to Valenzuela and Trejo, not inculpatory.

Instead, Valenzuela contends that Caballero's statements constituted impermissible character evidence under Evidence Code section 1101 and were otherwise unduly prejudicial, presumably under Evidence Code section 352.  Because Valenzuela did not object on this basis before the trial court, he has forfeited these claims.  (Evid.

Code, § 353.)  The claims also fail on their merits.  Evidence Code section 1101, subdivision (a), generally precludes admission of "evidence of a person's character . . . to prove his or her conduct on a specified occasion."  Even if we assume that Caballero's exculpatory statements constitute evidence tending to show Caballero's character for callousness, this does not violate *Valenzuela's* rights under section 1101 because evidence of *Valenzuela's* character was not being introduced.  Under Evidence Code section 352, a court has the discretion to exclude otherwise relevant evidence if the court determines that "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Caballero's statements are probative of his gang affiliation as well as to corroborate Garcia's account of his knowledge of DNA.  The statements do not create any substantial danger of undue prejudice *to Valenzuela* because Caballero said Valenzuela was innocent; if anything, the statements tended to show Caballero's callousness and thereby lent support to Valenzuela's defense that he was coerced into the kidnapping and did not lie in wait to kill Padilla.

The trial court did not abuse its discretion in admitting Caballero's statements.

### B.    *Prosecutorial misconduct*

Valenzuela also argues in passing that the prosecutor committed misconduct in closing argument by urging the jurors to put themselves on the mountain when Caballero was strangling Minjarez.  The trial court interrupted the prosecutor and admonished her from that line of argument; the prosecutor complied.

Valenzuela's argument lacks merit for two reasons.  First, he did not "timely object and request an admonition."  (*People v. Linton* (2013) 56 Cal.4th 1146, 1205.)  Even if we assume that the trial court's intervention obviated the need for an objection, Valenzuela never requested an admonition and there was no evidence that such a request would have been futile or would not have cured the harm.  (*Ibid.*)  Second, the prosecutor's brief comment was not prejudicial.  Although "'an appeal to the jury to view the crime through the eyes of the victim is misconduct at the guilt phase of trial'"

21

(*People v. Seumanu* (2015) 61 Cal.4th 1293, 1344), such misconduct can be harmless (*ibid.*). Here, it was. The prosecutor's comment was fleeting, brief and isolated. (Cf. *People v. Hill* (1998) 17 Cal.4th 800, 819-839 [involving multiple, egregious acts of prosecutorial misconduct].) Critically, the prosecutor's statements pertained to *Trejo's* crime—not *Valenzuela's*. And the jury was instructed that the arguments of counsel were not evidence, and we presume the jury follows such instructions (*People v. Ervine* (2009) 47 Cal.4th 745, 776).

### C. Cumulative error

Because there was only one error and we are remanding to the trial court for further proceedings on that issue, we have no basis to reverse due to cumulative error.

## DISPOSITION

As to Valenzuela, the judgment is affirmed.

As to Trejo, the imposition of a ten-year enhancement pursuant to section 12022.53 is stricken. The superior court is ordered to prepare an amended abstract of judgment to reflect the imposition of a one-year enhancement pursuant to section 12022, subdivision (a)(1) in its stead, and to forward a certified copy of the amended abstract to the California Department of Corrections and Rehabilitation. The matter is remanded to the superior court to elect whether to impose a 15-year minimum parole eligibility term for the gang finding pursuant to section 186.22, subdivision (b)(5). The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST

22